LAW OFFICE OF
# JAROSLAWICZ & JAROS

150 WILLIAM STREET, 19TH FLOOR
NEW YORK, NEW YORK 10038

(212) 227-2780

DAVID JAROSLAWICZ
(NY, FL & CA BARS)
ABRAHAM JAROS

ROBERT J. TOLCHIN
OF COUNSEL
rjt@tolchinlaw.com

January 18, 2007

Hon. Joseph. F. Bianco
United States District Judge
United States Courthouse
Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re:  *Itzhak Lerner v. Fredric A. Powell, Esq. and Hightower Homes, Inc.*
          Docket no. 06 CV 6717 (JFB) (ARL)

Dear Judge Bianco,

      The defendant Fredric A. Powell, Esq. has now retained counsel, interposed an answer (docket item #11), and filed a letter attempting to answer the plaintiffs' concerns as directed by the Court in its January 11 order (docket item # 12).

      That letter, however, raises more questions than it answers. Among these are the following, which I set forth here in the hopes that Mr. Powell's counsel will be prepared to answer them at the upcoming conference.

      1.    If the defendant Powell was holding the plaintiff's money in an escrow account, why has he failed to account for all funds received and disbursed? 22 N.Y.C.R.R. § 1200.46(d)(1) <u>requires</u> that Mr. Powell maintain records specifically identifying "the date, source and description of each item

JAROSLAWICZ & JAROS

January 18, 2007
Page 2 of 4

deposited, as well as the date, payee and purpose of each withdrawal or disbursement." Yet Mr. Powell's "explanation" provides no details about what money plaintiff gave him, how much additional money belonging to the plaintiff was generated by previous transactions, how much remained after the Hightower investment, or what was the purpose of each of the various odd-amount checks issued by Powell.

    2.    Powell's counsel's letter asserts that there was a mortgage note issued in favor of the plaintiff. Yet no such mortgage note was attached to the letter. The document attached as Exhibit A, promised to include the mortgage note, included only a <u>mortgage</u>. A mortgage is just a lien, not a promissory note. Where is the mortgage note?

    3.    Powell asserts that he got involved securing private funding for a real estate developer took on the responsibility of holding escrow funds, exposed himself to accountability for escrow funds, prepared documents, secured title insurance, and who knows what else, all for a fee of $425.50. Really! It is very difficult to believe that Powell was not getting something more here out of these very unusual transactions.

    4.    If the money was being lent to Hightower Homes, Inc., why is there only one check, in the sum of $12,000, to Hightower Homes, Inc., with the rest being issued mainly to Sam Hightower personally or other entities?

    5.    Why were two separate checks payable to Sam Hightower issued on February 5, 2004 and again on February 18, 2004?

    6.    Why were these loan proceeds dispensed in dribs and drabs?

    7.    Which of these loan proceed disbursement checks comprised the plaintiffs' money, and which comprised the money of the other individuals identified on the mortgage?

    8.    What authorized Powell to invest money that he was supposed to be holding in escrow without the plaintiff's consent?

    9.    When Powell realized that he had not received the plaintiff's consent, why did he not return the money?

JAROSLAWICZ & JAROS					January 18, 2007
							Page 3 of 4

      10.    Why has the property not been sold yet? A recent visit to the property reveals that construction has stalled. It has been three years. What is the cause of the delay? What has Powell, the escrow holder, and therefore fiduciary, done about it?

      11.    Powell does not state that he <u>ever</u>, even after the fact, received the plaintiff's consent to this transaction. He reports that he got a mortgage and gave a personal guarantee, but he does not present anything to evidence that the plaintiff ever consented to this arrangement.

      12.    Powell alleges in his answer that his "personal guarantee" given to the plaintiff was not a full personal guarantee, but was merely a guarantee to pay "any deficiency in the principal sum loaned and interest earned only after foreclosure and/or other collection efforts against the borrower." (Answer, paragraph 5). Powell cites no source for this limitation on his personal guarantee, nor is there any. Powell's personal guarantee was actually unlimited.

      The text of the guarantee, written by Powell in his own hand, was as follows:

> Dear Yitzchok —
> I am very sorry for the confusion surrounding the $195,000 new loan with Hightower Homes. I apologize for my mistake and will make up for it by personally guaranteeing the note with Hightower. The loan is secured fully & will not be a problem. The property has value of $450,000.00. In addition, Alex will bring the additional 1% owed tomorrow & I will transfer to your account.
> Very truly yours,
> [signature]

(Complaint, Exhibit B).

JAROSLAWICZ & JAROS

January 18, 2007
Page 4 of 4

Where does this guarantee say that the plaintiff has to wait indefinitely for Hightower to finish building the house and sell it before getting his money back?

Respectfully yours,

Robert J. Tolchin

cc: Gary Schoer, Esq.
 *Attorney for the defendant*